United States District Court
Southern District of Texas

**ENTERED**

April 19, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANDREW BURKE, TDCJ #2465084,    §
                                §
            Plaintiff,          §
                                §
v.                              §    CIVIL ACTION NO. H-23-0361
                                §
DEPUTY SHERIFF BENJAMIN MASTERS,§
et al.,                         §
                                §
            Defendants.         §

**<u>MEMORANDUM OPINION AND ORDER</u>**

The plaintiff, Andrew Burke (TDCJ #2465084, former Fort Bend Inmate #00242515), filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that the following detention officers used excessive force during a cell extraction at the Fort Bend County Jail in Richmond, Texas, on October 1, 2022: (1) Deputy Sheriff Benjamin Masters; (2) Deputy Sheriff Guillermo Vargas; (3) Deputy Sheriff Augustine Barron; (4) Sergeant Onyeka Nweke; and (5) Sergeant William Conger. Burke also provided a More Definite Statement of his claims ("Plaintiff's MDS") (Docket Entry No. 21). Now pending before the court is Defendants' Motion for Summary Judgment ("Defendants' MSJ") (Docket Entry No. 46). Burke has filed more than one response (Docket Entry Nos. 51, 55), and he has also filed a "[Motion for] Summary Judgment on [Plaintiff's] Behalf" ("Plaintiff's MSJ") (Docket Entry No. 54). The defendants have filed Defendants' Response to Plaintiff's Motion for Summary Judgment ("Defendants' Reply")

(Docket Entry No. 56). After considering all of the pleadings, exhibits, and the applicable law, the court will grant Defendants' MSJ and will dismiss this case for the reasons set forth below.

## I. **Background**

Burke executed his Complaint on January 30, 2023, while confined at the Fort Bend County Jail,[1] which is operated by the Fort Bend County Sheriff's Office ("FBCSO"). At that time Burke was a pretrial detainee facing several serious felony charges, including solicitation of capital murder, assault on a public servant, aggravated assault with a deadly weapon, and assault causing bodily injury.[2] On September 15, 2023, Burke was convicted of solicitation of capital murder and sentenced to life in prison.[3] Shortly thereafter, Burke was transferred to the Texas Department of Criminal Justice ("TDCJ"), where he remains in custody.[4]

## A. **Burke's Allegations**

Burke alleges that he was "viciously beaten" by the defendants after he refused an order to return to his assigned cell at the

---

[1]Complaint, Docket Entry No. 1, pp. 3, 5. Unless otherwise indicated, all Docket Entries refer to this case (H-23-cv-361). For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]Plaintiff's MDS, Docket Entry No. 21, p. 1 (Response to Question 3A).

[3]Defendants' MSJ, Docket Entry No. 46, p. 1 ¶ 1.

[4]Id. at 1 ¶ 2.

Fort Bend County Jail.[5]   The incident occurred during the early morning hours of October 1, 2022,[6] while Burke was in "Administrative Segregation" or "Separation" status.[7]

Burke explains that he was moved from a padded cell to a separation cell to take a shower that night.[8]   Although Burke acknowledges that he was ordered to return to his padded cell, he "attempted to stay" in the separation cell.[9] After he refused the order, Burke claims that Deputy Masters "[v]iciously assaulted" him with a "riot shield."[10]   Burke alleges further that Deputy Vargas punched him in the testicles with a "closed fist," and that Deputy Barron "[s]mashed" his face to the ground, causing "contusions" on his face.[11]   Burke also alleges that Sergeant Nweke took video footage of the incident and that Sergeant Conger ordered the other officers to "beat" him.[12]

Invoking 42 U.S.C. § 1983, Burke claims that the defendants used excessive force because his face was "black [and] blue," he

---

[5]Complaint, Docket Entry No. 1, p. 4 ¶ V.

[6]Plaintiff's More Definite Statement in Burke v. Becerra, Civil Action No. H-22-3329 (S.D. Tex.) (Docket Entry No. 6, p. 9 (Response to Question 9)).

[7]Plaintiff's MDS, Docket Entry No. 21, p. 3 (Response to Question 7).

[8]Complaint, Docket Entry No. 1, p. 4 ¶ V.

[9]Id.

[10]Id. at 3.

[11]Id.

[12]Id.

-3-

sustained a broken rib, and his wrists were bloodied during the incident.[13]  Burke adds that he endured "20 fist punches to [his] testicles," which left him in extreme pain for several weeks.[14] Burke seeks $5,000,000.00 in damages.[15]

## B.   Defendants' Motion for Summary Judgment

The defendants move for summary judgment, arguing that they are entitled to qualified immunity because Burke's allegations are false and he cannot establish a constitutional violation or otherwise show that their conduct violated clearly established law.[16] The defendants argue further that the video evidence of the incident refutes Burke's claim that he was injured as the result of an excessive or impermissible use of force,[17] and that any frivolous or malicious claim should be dismissed.[18]  In support of their arguments the defendants provide a video and still photographs of the incident.[19] Each defendant has provided an affidavit disputing

---

[13]Id. at 4; Plaintiff's MDS, Docket Entry No. 21, pp. 3-4 (Response to Question 8).

[14]Plaintiff's MDS, Docket Entry No. 21, pp. 3-4 (Response to Question 8).

[15]Complaint, Docket Entry No. 1, p. 4.

[16]Defendants' MSJ, Docket Entry No. 46, pp. 12-13 ¶¶ 47-51.

[17]Id. at 14-15 ¶¶ 57-58.

[18]Id. at 5 ¶ 22.

[19]DVD, Exhibit 2A to Defendants' MSJ, Docket Entry No. 47; Still Photographs, Exhibits 2B through 2H to Defendants' MSJ Docket Entry No. 46-2, pp. 12-25.

Burke's version of the event.[20] They also provide the FBCSO policy on the use of force[21] and Jail security procedures.[22] In addition, the defendants provide an administrative report regarding the incident.[23] The defendants' summary judgment evidence is summarized below.

## C. Defendants' Summary Judgment Evidence

On October 1, 2022, Sergeant Nweke, Sergeant Conger, and two other officers escorted Burke from his padded cell to a nearby separation cell for a "mandatory" shower.[24] Sergeant Nweke was the

---

[20]Deputy Sheriff Onyeka Nweke's Affidavit in Support of Defendants' Motion for Summary Judgment ("Nweke Affidavit"), Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, pp. 2-12; Deputy Sheriff William Conger's Affidavit in Support of Defendants' Motion for Summary Judgment ("Conger Affidavit"), Exhibit 2 to Defendants' MSJ, Docket Entry No. 46-2, pp. 2-9; Deputy Sheriff Benjamin Master[s]' Affidavit in Support of Defendants' Motion for Summary Judgment ("Masters Affidavit"), Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3; Deputy Sheriff Guillermo Vargas'[s] Affidavit in Support of Defendants' Motion for Summary Judgment ("Vargas Affidavit"), Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4; Deputy Sheriff Augustine Barron's Affidavit in Support of Defendants' Motion for Summary Judgment ("Barron Affidavit"), Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5.

[21]FBCSO General Order 09-02, on the Use of Force ("General Order 09-02"), Exhibit 1E to Defendants' MSJ, Docket Entry No. 46-1, pp. 35-41.

[22]FBCSO Jail Procedures Manual § 02.06, Security and Control: Inmate Supervision, Escorts and Transports ("Jail Procedures Manual 02.06") Exhibit 1F to Defendants' MSJ, Docket Entry No. 46-1, pp. 43-49.

[23]Fort Bend County Jail Incident/Disciplinary Summary ("Incident Summary"), Exhibit 1A to Defendants' MSJ, Docket Entry No. 46-1, pp. 14-22.

[24]Id. at 14.

supervisor on duty that night.[25]  Nweke explains that "Burke had been assigned to a padded cell due, in part, to mental health concerns identified by the medical health professionals on site, as well as correctional officers."[26]

When Burke refused orders to be secured in handcuffs and return to his padded cell, Sergeant Nweke called for a Special Response Team ("SRT") to "suit up" for a cell extraction.[27]  An SRT consisting of Deputy Masters, Deputy Vargas, Deputy Barron, and two other officers responded.[28]  Although Sergeant Nweke instructed Burke "multiple times" to submit to handcuffs and return to his assigned padded cell, Burke "refused all orders given to him and began threatening the officers by stating he would swing at any officers entering the [separation] cell."[29]

All of the defendants were familiar with Burke and were aware of "a number of security and safety concerns" that he had created while at the Fort Bend County Jail.[30]  According to the defendants,

_____

[25]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 3 ¶ 6.

[26]Id. at 4 ¶ 9.

[27]Incident Summary, Exhibit 1A to Defendants' MSJ, Docket Entry No. 46-1, p. 14.

[28]Id.

[29]Id.

[30]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 4 ¶ 10; Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 4 ¶ 9; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 4 ¶ 9; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 4 ¶ 9.

Burke was "known to be a violent, able and aggressive individual who suffered from certain abnormal and/or delusional thought processes from time to time."[31]  Because Burke was "unpredictable and dangerous," he was "classified as one of the most dangerous and violent inmates housed at the Jail at that time."[32]  Sergeant Nweke notes that by October of 2022 Burke "had already committed multiple unprovoked attacks and assaults on a number of innocent persons" at the Jail.[33]  Because Burke was known to be "an aggressive and dangerous individual in a high state of physical fitness," Sergeant Nweke explains that he was "considered potentially very dangerous to any officer or other person found in his presence while unrestrained."[34]

Security procedures at the Jail require that all high risk inmates are housed in a "special housing unit or cell," whether that classification is due to "disciplinary, separation, [or]

---

[31]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, pp. 4-5 ¶ 10; Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 4 ¶ 9; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 4 ¶ 9; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 4 ¶ 9.

[32]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 5 ¶ 10; Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 4 ¶ 9; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 4 ¶ 9; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 4 ¶ 9.

[33]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 6 ¶ 16.

[34]Id.

-7-

mental health" needs, or due to aggressive behavior.[35]   Violent inmates are placed under observation in padded cells, which are "covered with a foam-like material made to protect the inmate from self-injury."[36]   Security staff is required to "take caution when escorting high risk inmates."[37]   High risk inmates are required to be "handcuffed in the back or belly-chained prior to being escorted unless waived by a supervisor."[38]

FBCSO policy requires all employees to use "de-escalation techniques and tactics to reduce any threats or gain compliance to lawful commands without the use of force or with the lowest level of force possible."[39]   When warranted, officers "are expected to exercise lawful and appropriate control [during encounters with detained persons] when carrying out their duties."[40]   Officers are directed to "use only the amount of objectively reasonable force which appears necessary under the circumstance to successfully accomplish the legitimate law enforcement/detention purposes in accordance with the Law and FBCSO policy."[41]   Levels of force for

---

[35]Jail Procedures Manual § 02.06, Exhibit 1F to Defendants' MSJ, Docket Entry No. 46-1, p. 43.

[36]Id. at 43, 45 ¶ 2(D).

[37]Id. at 47 ¶ 6(E).

[38]Id.

[39]General Order #09-02, Exhibit 1E to Defendants' MSJ, Docket Entry No. 46-1, p. 35.

[40]Id.

[41]Id. at 36 ¶ V(B)(1).

gaining lawful control of a subject range from, to a lesser degree, "[m]ere presence" by a uniformed officer with a badge followed by "[v]erbal direction," to "[p]hysical compliance tactics," which includes "[p]hysical contact such as grabbing arms/hands for handcuffing or placing into an approved restraint device, utilizing FBCSO approved and trained tactics[.]"[42]  The subject's actions may dictate the immediate use of a higher degree of force, which may include the use of "[i]ntermediate [w]eapons," or even the highest degree of force, which is "[d]eadly [f]orce," including but not limited to "discharge of a firearm."[43]

According to Sergeant Nweke, the use-of-force incident on October 1, 2022, occurred due to Burke's "refusal to obey [Nweke's] lawful order to voluntarily and peaceably relocate back into his padded cell after he had taken a mandatory shower in a separation cell, and his threat to cause bodily injury to any officer entering the separation cell to extract him."[44]  Once the SRT officers were assembled and equipped with protective body armor, including helmets and shields, the officers were instructed to work cooperatively upon entering the padded cell by pushing Burke back into the corner with a "large body shield" that was carried by Deputy Masters, who was directed to take the point position upon

---

[42]Id. at 37 ¶ V(E)(1)(a)-(c).

[43]Id. at 37 ¶ V(E)(1)(d)-(e), V(E)(2).

[44]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 3 ¶ 7.

-9-

entry.[45]  Sergeant Nweke explains that "[t]he goal was to attempt, as quickly and safely as possible, to gain control over Inmate Burke and promptly handcuff his hands behind his back."[46]  Shortly before the SRT officers were to make entry Sergeant Nweke advised the officers that Burke had "deliberately wetted the floor of the cell in an attempt to have the team slip upon entry."[47]

Before the use of force occurred Sergeant Nweke gave Burke "several opportunities to voluntarily comply with normal handcuffing in order to permit the officers on duty to escort him safely back to his padded cell," but Burke refused to cooperate.[48] Sergeant Conger recorded the interaction on video as Burke refused to obey orders and became belligerent.[49]  A still photograph from the video shows Burke in a fighting stance with raised fists towards the officers who were poised to enter his cell.[50]

The video taken by Sergeant Conger documents the use-of-force incident as follows:

---

[45]Id. at 6 ¶¶ 17-18.

[46]Id. at 6 ¶ 18.

[47]Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 4 ¶ 10.

[48]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 5 ¶¶ 11, 12.

[49]Conger Affidavit, Exhibit 2 to Defendants' MSJ, Docket Entry No. 46-2, p. 4 ¶ 8.

[50]Still Photograph, Exhibit 2B to Defendants' MSJ, Docket Entry No. 46-2, p. 13.

- At 00:08-00:11 Sergeant Nweke gives Burke his "last chance to comply" with the order to leave the separation cell.

- Between 00:12 and 00:45 Burke argues with Sergeant Nweke and indicates that he will not comply.

- At 00:54 Sergeant Nweke implores, "Come on Burke, put your hands out.  Let us put you in handcuffs."

- At 01:06 Burke refuses and states that he will "stand his ground."

- From 01:27 through 02:50 Burke can be seen stretching and flexing his hands, arms, and shoulders in a belligerent manner as the SRT officers prepare to enter the separation cell.

- At 02:50 the SRT officers make entry and Burke appears to strike at them.

- At 02:55 Burke can be seen using a closed fist to punch at members of the SRT.

- At 03:04 the SRT officers can be seen struggling to subdue Burke on the floor of the cell as Sergeant Nweke orders him to "stop resisting."

- Burke continues to resist until 03:56-04:20 when he was restrained in handcuffs and helped to his feet by the SRT officers.

- At 04:24 the video shows both sides of Burke's face as he walked from the separation cell.  The left side of his face appears slightly scuffed, but there are no other apparent injuries.

- At 04:35 the SRT officers escort Burke down the hall to his padded cell while Burke is yelling loudly and actively resisting.

- At 04:49 Burke continues struggling with the SRT officers as one of the team members retrieves a padded smock or quilt and places it on the floor of the padded cell.

- At 05:26 Sergeant Nweke again orders Burke to "stop resisting" as the SRT officers attempt to subdue him on the floor of the padded cell.

-11-

- From 05:58 through 06:06 the SRT officers place Burke on the floor of the padded cell and can be seen wrapping the quilt around him.

- At 07:28 the SRT officers prepare to leave the padded cell while ensuring that Burke is securely wrapped in the quilt.

- At 08:19 the last SRT officer leaves the padded cell as Burke is told to "stay on the ground."

- At 08:27 the door to the padded cell is secured and Burke immediately jumps up and rushes toward the door.

- At 08:30 Burke can be seen at the window laughing at the officers and stating "I almost got you."

- At 09:00 Nurse Durelle arrives at the door to Burke's cell and begins to conduct an examination.

- At 10:13 Burke tells Nurse Durelle that his "face is fine."

- At 10:20 Burke tells Nurse Durelle that his "balls feel fine" because the officers "didn't hit hard enough."

- At 11:07 through 11:33 Nurse Durelle examined one of Burke's wrists through the pan hole in the cell door, commenting that it looks "pinched" and a little bruised from resisting the handcuffs.

- At 12:16 Nurse Durelle medically cleared Burke.[51]

Sergeant Conger continued to record interviews with each of the SRT officers, who reported having no injuries from the altercation with Burke.[52]

Affidavits from the defendants are consistent with the video footage and still photographs. Deputy Masters acknowledges that he

---

[51]DVD, Exhibit 2A to Defendants' MSJ, Docket Entry No. 47.

[52]Conger Affidavit, Exhibit 2 to Defendants' MSJ, Docket Entry No. 46-2, p. 6 ¶¶ 14, 15.

-12-

was the first SRT officer through the door and that he used a
"shield to block Burke from attacking the team, while
simultaneously trying to drive him into the corner of the cell
where he would be easier to control."[53]  Deputy Vargas and Deputy
Barron report that once Burke was near the corner of the cell "all
team members utilized various open-handed control techniques" in an
attempt to restrain him.[54]  Burke continued to struggle, punching
some of the team members, and would not voluntarily lay down on the
floor to be handcuffed.[55]  Once Burke was returned to his padded
cell, Deputy Vargas explains that Burke was placed face down and
temporarily secured in a "suicide smock/quilt" or wrapper to
prevent him from attacking the officers as they removed his
handcuffs.[56]  After Burke was secured in his padded cell he quickly
escaped the wrapper and tried to attack the officers as they exited
the cell.[57]

---

[53]Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry
No. 46-3, pp. 4-5 ¶ 13.

[54]Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry
No. 46-4, p. 4 ¶ 13; Barron Affidavit, Exhibit 5 to Defendants'
MSJ, Docket Entry No. 46-5, p. 4 ¶ 13.

[55]Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry
No. 46-4, p. 4 ¶ 14; Barron Affidavit, Exhibit 5 to Defendants'
MSJ, Docket Entry No. 46-5, p. 4 ¶ 14.

[56]Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry
No. 46-4, p. 5 ¶ 16; Barron Affidavit, Exhibit 5 to Defendants'
MSJ, Docket Entry No. 46-5, p. 5 ¶ 16.

[57]Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry
No. 46-4, p. 5 ¶ 18; Barron Affidavit, Exhibit 5 to Defendants'
MSJ, Docket Entry No. 46-5, p. 5 ¶ 18.

Sergeant Nweke notes that neither he nor Sergeant Conger ever made any physical contact with Burke during the entire incident and did not use any force against him.[58]   Sergeant Nweke contends that, in his opinion, the SRT officers complied at all times with FBCSO policy and procedure in "securely controlling and moving" Burke.[59] Both Sergeant Nweke and Sergeant Conger believe that the SRT officers' actions were "objectively reasonable" under the circumstances.[60]

The defendants who entered the cell as SRT officers (Deputy Masters, Deputy Vargas, and Deputy Barron) deny causing Burke injury.[61]   The SRT officers emphasize that Burke was "engaging in active resistance in refusing to comply with [Sergeant] Nweke's lawful directives, and [that] only open hand control and grappling techniques were utilized by the team members in the extraction."[62] The SRT officers deny using excessive force and contend that they acted "in good-faith and within the exercise of reasonable

---

[58]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 8 ¶ 29.

[59]Id. at 11 ¶ 41.

[60]Id. at 11 ¶ 43; Conger Affidavit, Exhibit 2 to Defendants' MSJ, Docket Entry No. 46-2, p. 7 ¶ 22.

[61]Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 5 ¶ 22; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 5 ¶ 20; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 5 ¶ 20.

[62]Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 6 ¶ 24; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, pp. 5-6 ¶ 22; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, pp. 5-6 ¶ 22.

penological discretion."[63]   The SRT officers emphasize that "only reasonable force was utilized which was made necessary by Inmate Burke's refusal to cooperate voluntarily with lawful orders to relocate back to his padded cell[.]"[64]

## D.   Burke's Motion for Summary Judgment

Burke filed his own motion for summary judgment after viewing a copy of the video, arguing that the video constitutes evidence that he was punched repeatedly in the testicles for a span of thirty seconds, pointing to a portion of the video at 03:00 to 03:30.[65]   The defendants note in reply that the video disproves Burke's self-serving statement and that no reasonable person viewing the video could come to the conclusion that excessive or constitutionally impermissible force was used.[66]   The defendants note further that Burke wholly fails to address the defense of qualified immunity and presents no evidence showing he suffered any constitutional injury or damages.[67]

---

[63]Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 6 ¶ 26; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 6 ¶ 24; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 6 ¶ 24.

[64]Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 7 ¶ 27; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 6 ¶ 25; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 6 ¶ 25.

[65]Plaintiff's MSJ, Docket Entry No. 54, pp. 2-3.

[66]Defendants' Reply, Docket Entry No. 56, p. 3 ¶ B1.

[67]Id. at 4-7 ¶¶ C1-13.

## II.   __Standards of Review__

### A.   __Motions for Summary Judgment__

Both parties move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.

If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial."  Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Independent School District, 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party[.]"  Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted).

The nonmovant cannot meet its burden by resting upon mere allegations or denials in the nonmovant's pleadings. See Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998); see also Johnston v. City of Houston, Texas, 14 F.3d 1056, 1060 (5th Cir. 1994) ("'Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.'") (quoting Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991)). Likewise, the nonmovant cannot avoid summary judgment by presenting "'[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Insurance Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

## B. Qualified Immunity

The defendants have asserted qualified immunity from suit in this case. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). A plaintiff seeking to overcome qualified immunity must show: "(1) that the

-17-

official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted). If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is appropriate, nevertheless, "because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (quoting Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks and citation omitted). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." Brown, 623 F.3d at 253 (citation omitted). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." Brewer v. Hayne, 860 F.3d 819, 824 (5th Cir. 2017).

At the summary-judgment stage a plaintiff does not satisfy his burden to overcome the defense of qualified immunity with

-18-

conclusory allegations or unsubstantiated assertions of wrongdoing. See Mitchell v. Mills, 895 F.3d 365, 370 (5th Cir. 2018); Williams-Boldware v. Denton County, Texas, 741 F.3d 635, 643-44 (5th Cir. 2014). In addition, courts are not obliged to accept a plaintiff's version of events where it is blatantly contradicted by video or photographic evidence. See Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) (holding that the lower court should have viewed facts in light of video evidence rather than the plaintiff's allegations where the video so "utterly discredited" the plaintiff's allegations such that "no reasonable jury could have believed him"); Garcia v. Orta, 47 F.4th 343, 350 (5th Cir. 2022) (observing that, after Scott, courts may consider "still photographs and video evidence" when evaluating a plaintiff's version of the facts).

## C. Pro Se Pleadings

The court is mindful that the plaintiff represents himself. Courts are required to give a pro se litigant's contentions a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Nevertheless, a pro se litigant is not excused from meeting his burden of proof by specifically referring to evidence in the summary judgment record

-19-

and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Associates, Inc., 840 F.3d 212, 217 (5th Cir. 2016); see also Bookman v. Shubzda, 945 F. Supp. 999, 1004 (N.D. Tex. 1996). The court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams v. Travelers Indemnity Company of Connecticut, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks and citation omitted).

## III. **Discussion**

Pretrial detainees are protected by the Fourteenth Amendment Due Process Clause "from the use of excessive force that amounts to punishment." Graham v. Connor, 109 S. Ct. 1865, 1871 n.10 (1989) (citing Bell v. Wolfish, 99 S. Ct. 1861, 1871-74 (1979)). To defeat qualified immunity and prevail on a claim under the Fourteenth Amendment, a prisoner must show that force was "purposely or knowingly used against him" in a manner that was "objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (clarifying that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one"). A pretrial detainee can prevail only if he shows that the defendants applied force in a manner that was not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions were "excessive in relation to that purpose." Id.; Bell, 99 S. Ct. at 1886.

-20-

Whether or not an officer's actions are objectively reasonable "turns on the 'facts and circumstances of each particular case.'" Kingsley, 135 S. Ct. at 2473 (quoting Graham, 109 S. Ct. at 1872). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. The "calculus of reasonableness" must take into account the fact that officers "are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham, 109 S. Ct. at 1872. A reviewing court must also take into account policies and practices that are judged necessary by jail officials for the legitimate interests of preserving internal order, discipline, and institutional security. Kingsley, 135 S. Ct. at 2473 (citing Bell, 99 S. Ct. at 1878). To determine whether a use of force was objectively reasonable or unreasonable, a reviewing court may consider the following non-exclusive list of factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant; and (6) whether the plaintiff was actively resisting. See id.

As an initial matter, it is undisputed that neither Sergeant Nweke nor Sergeant Conger used any force against Burke. Because

-21-

Burke does not demonstrate that Sergeant Nweke or Sergeant Conger acted unreasonably while supervising and videotaping the use of force, respectively, these defendants are entitled to qualified immunity.

Burke fails to raise a genuine fact issue or otherwise show that the SRT officers (Deputy Masters, Deputy Vargas, and Deputy Barron) used force against him in an objectively unreasonable manner under the factors articulated above in Kingsley, 135 S. Ct. at 2473. Burke does not dispute that he was housed in a maximum security area of the Jail due to his violent behavior and concerns about his mental health, of which the defendants were well aware.[68] As a high-risk inmate, Burke was required by Jail policy to be handcuffed while being escorted within the Jail.[69] Burke does not deny that he refused to obey Sergeant Nweke's orders to submit to handcuffs and return to his assigned padded cell.[70]

Because Burke was an inmate assigned to the highest security level at the Jail, the officers reasonably perceived that his disobedience was a threat to institutional order and security. See

---

[68]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, pp. 4-5 ¶ 10; Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 4 ¶ 9; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 4 ¶ 9; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 4 ¶ 9.

[69]Jail Procedures Manual § 02.06, Exhibit 1F to Defendants' MSJ, Docket Entry No. 46-1, p. 47 ¶ 6(E).

[70]Plaintiff's MDS, Docket Entry No. 21, p. 3 (Response to Question 6) (admitting that he stated "NO" in response to an order to submit).

Rios v. McBain, No. Civ. A. [5:04CV84], 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), Report and Recommendation adopted by 2005 WL 1026192 (E.D. Tex. April 28, 2005); Minix v. Blevins, Civil Action No. 6:06-306, 2007 WL 1217883, at *24 (E.D. Tex. April 23, 2007) (recognizing that even where a prisoner believes an order to be "unjustified and improper, this does not give him the right to disobey them at his whim"). The Supreme Court has observed that "[e]nsuring security and order at [an] institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Bell, 99 S. Ct. at 1886.

"Officers may consider a [detainee's] refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the [detainee's] compliance." Darden v. City of Fort Worth, Texas, 880 F.3d 722, 729 (5th Cir. 2018) (quoting Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)). Courts have repeatedly recognized that a pretrial detainee's refusal to comply with repeated orders justifies the use of some degree of force by officers to maintain or restore discipline. See Sanchez v. Griffis, 569 F. Supp. 3d 496, 511 (W.D. Tex. 2021); see also Gonzales v. Rowe, Civil Action No. 5:20-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (citing Calhoun v. Wyatt, Civil Action No. 6:11-4, 2013 WL 1882367, at *6 (E.D. Tex. May 2, 2013) (noting that inmate's refusal to obey

-23-

orders "set the stage for the use of force")); <u>Lewis v. Williamson County, Texas,</u> Case No. 1:21-cv-00074-ADA-SH, 2024 WL 270120, at *6 (W.D. Tex. Jan. 24, 2024) (concluding that force was reasonably used to subdue a detainee who was "disobedient and argumentative and flouted commands"); <u>see also Schneider v. Kaelin,</u> C.A. No. C-12-233, 2013 WL 1867611, at *5 (S.D. Tex. April 21, 2013) (observing that "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders") (citations omitted).

In addition to assessing the need for force, officers must also assess the relationship between the need and the amount used. <u>Darden,</u> 880 F.3d at 729. The video shows that Sergeant Nweke made every effort to reason with Burke and de-escalate the situation before the SRT officers entered the separation cell.[71]   The defendants knew that Burke was "classified as one of the most dangerous and violent inmates housed at the Jail" because of his unpredictable behavior.[72]   Burke does not dispute that he threatened to harm any officer who entered his cell.   The video footage and the still photograph showing Burke in a fighting stance refute any claim by Burke that he was not behaving in an aggressive manner

---

[71]DVD, Exhibit 2A to Defendants' MSJ, Docket Entry No. 47 (at 00:08 through 00:54).

[72]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 5 ¶ 10; Masters Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 46-3, p. 4 ¶ 9; Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 4 ¶ 9; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 4 ¶ 9.

before the SRT officers entered his cell.[73]   The evidence demonstrates that the need for force was directly related to Burke's active refusal to obey orders and that the amount of force was commensurate with his belligerent demeanor.

The evidence shows that an effort was made to temper the use of force by using the large riot shield wielded by the first officer to enter the separation cell (Deputy Masters) to press Burke into the corner of the cell while protecting the SRT officers from harm.[74]   The video confirms that apart from using the large riot shield upon entry to the cell the only force used by the SRT officers was open-hand control,[75] which is not considered an excessive tactic when used to gain an unruly detainee's compliance. See Cain v. Ambriz, 114 F. App'x 600, 601, 2004 WL 2244237, at *1 (5th Cir. Sept. 28, 2004) (per curiam) (using an open hand to the face to push an inmate into his cell was not objectively unreasonable given that he failed to comply with the officer's requests); Nazerzadeh v. Harris County, Civil Action No. H-08-0499,

---

[73]DVD, Exhibit 2A to Defendants' MSJ, Docket Entry No. 47 (at 01:27 through 02:50); Still Photograph, Exhibit 2B to Defendants' MSJ, Docket Entry No. 46-2, p. 13.

[74]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 6 ¶¶ 17-18.

[75]DVD, Exhibit 2A to Defendants' MSJ, Docket Entry No. 47 (at 02:55 through 06:06, showing that the officers struggled with Burke using open-hand techniques throughout the incident until Burke could be secured in his padded cell and wrapped in a quilt); see also Vargas Affidavit, Exhibit 4 to Defendants' MSJ, Docket Entry No. 46-4, p. 4 ¶ 13; Barron Affidavit, Exhibit 5 to Defendants' MSJ, Docket Entry No. 46-5, p. 4 ¶ 13.

2010 WL 3817149, at *30 (S.D. Tex. Sept. 27, 2010) (rejecting an excessive-force claim by a pretrial detainee and observing that the use of "soft or open-hand control" to subdue a prisoner is "a low degree of force, designed to respond to low levels of resistance").

On summary judgment, all evidence is typically viewed in the light most favorable to the non-movant. Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam) (reciting the well established "axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'") (quoting Anderson, 106 S. Ct. at 2513). Here, however, Burke's claim that he was viciously beaten and badly injured is utterly discredited by the video, see Scott, 127 S. Ct. at 1776, which is of sufficient clarity that a reasonable jury would not believe Burke's account. See Darden, 880 F.3d at 730. The video, which includes Burke's examination by a nurse, shows that he sustained no more than a small abrasion on one side of his face and minor bruising on one of his wrists from struggling with the handcuffs.[76] Burke communicated with the nurse without difficulty and did not report any other injuries.[77] Evidence that Burke sustained only minor abrasions to his face and wrists weighs against a finding of excessive force. See Thompson v. Beasley, 309 F.R.D. 236, 247-48 (N.D. Miss. 2015)

---

[76] DVD, Exhibit 2A to Defendants' MSJ, Docket Entry No. 47 (at 09:00 through 11:33).

[77] Id.

(rejecting an excessive-force claim by a pretrial detainee where the only injury reported was a "minor cut" near his eye); see also Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007) (observing that "minor, incidental injuries that occur in connection with the use of handcuffs . . . do not give rise to a constitutional claim for excessive force").

Sergeant Nweke and Sergeant Conger, who observed the cell extraction that occurred on October 1, 2022, conclude that the use of force was objectively reasonable under the circumstances.[78]  To the extent that the SRT officers used limited force for the legitimate purpose of obtaining Burke's compliance with repeated orders to maintain institutional order and security, these factors weigh in favor of finding that the use of force was objectively reasonable.  See Kingsley, 135 S. Ct. at 2473.

Absent evidence that force was used in a manner unrelated to a legitimate nonpunitive purpose or that the force used was excessive to the need, Burke fails to show that any of the defendants' actions were objectively unreasonable.  See Tennyson v. Villarreal, 801 F. App'x 295, 295-96 (5th Cir. 2020) (per curiam) (reversing denial of summary judgment for officers who took a noncompliant pretrial detainee to the ground in order to handcuff him behind his back).  Because Burke has failed to raise a genuine

---

[78]Nweke Affidavit, Exhibit 1 to Defendants' MSJ, Docket Entry No. 46-1, p. 11 ¶ 43; Conger Affidavit, Exhibit 2 to Defendants' MSJ, Docket Entry No. 46-2, p. 7 ¶ 22.

fact issue about whether excessive force was used in violation of clearly established law, all of the defendants are entitled to qualified immunity.  The court will grant the Defendants' MSJ on this issue and dismiss this case.

## IV. <u>Conclusion and Order</u>

Based on the foregoing, the court **ORDERS** as follows:

1.  The Defendants' Motion for Summary Judgment (Docket Entry No. 46) is **GRANTED**, and the [Motion for] Summary Judgment on [Plaintiff's] Behalf (Docket Entry No. 54) is **DENIED**.

2.  This civil action will be dismissed with prejudice.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.**

**SIGNED** at Houston, Texas, on this 19th day of April, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE